EVOLUTION ONLINE SYSTEMS, INC., Plaintiff–Appellant,

v.

KONINKLIJKE PTT NEDERLAND N.V., KPN Multimedia, B.V., PTT Telecom B.V., planet internet BVIO and Pieter Van Hoogstraten, Defendants–Appellees,

Docket No. 97–7466.

United States Court of Appeals, Second Circuit.

Argued Jan. 27, 1998.

Decided May 27, 1998.

Philip Pierce, New York City, for Plaintiff–Appellant.

David Eames, New York City, for Defendants–Appellees.

Before: CALABRESI, CABRANES, and HEANEY,* Circuit Judges.

* The Honorable Gerald W. Heaney, Circuit Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation.

HEANEY, Circuit Judge:

## I.

Evolution Online Systems, Inc. ("Evolution") appeals from the March 17, 1997 order of the United States District Court for the Southern District of New York (Rakoff, *Judge* ), which dismissed Evolution's complaint for breach of contract, copyright infringement, and quantum meruit filed against Koninklijke PTT Nederland N.V., KPN Multimedia, B.V., PTT Telecom B.V., Planet Internet BVIO, and Pieter van Hoogstraten (collectively "Koninklijke") without prejudice as to Evolution bringing its claim in the Netherlands. We vacate and remand to the district court for proceedings consistent with this opinion.

## II.

In the summer of 1994, Pieter van Hoogstraten, vice president and chief operations officer of Koninklijke, began negotiating with representatives of Evolution for the production of software and the provision of technical expertise by Evolution for a computer network in the Netherlands. In late September of that year, the parties exchanged letters outlining the terms of an agreement. In its letter to Evolution, Koninklijke indicated that it required the approval of its shareholders to enter into an agreement.

Subsequently, the parties exchanged draft contracts containing a provision indicating that Dutch law would apply to the contract and that conflicts arising under the contract would be resolved in a forum in the Netherlands.[1] There continued to be differences with respect to other terms, and the parties did not enter into a written agreement.

Although the parties had not reached a written agreement, Koninklijke paid Evolution over $400,000, starting with a $90,000 payment on October 12, 1994, to create computer software programs and provide techni-

cal services. Meanwhile, Evolution organized itself as a New York corporation, opened a corporate bank account, leased office space, and hired programmers to work on what Evolution understood to. be its agreement with Koninklijke. On July 25, 1995, Koninklijke terminated its arrangement with Evolution, asserting that Evolution failed to meet deadlines or provide usable programs, thereby forcing Koninklijke to pay over $1,000,000 to other companies to provide what it had expected from Evolution.

Evolution filed an action in the United States District. Court for the Southern District of New York against Koninklijke, claiming breach of contract, copyright infringement, and quantum meruit. Koninklijke moved to dismiss the complaint on several grounds: the district court lacked subject matter jurisdiction to hear Evolution's copyright claim, the action should be brought in the Netherlands pursuant to the parties' agreement on forum selection, and the doctrine of forum non conveniens militated dismissal in favor of a forum in the Netherlands. The district court granted Koninklijke's motion to dismiss, incorporating its comments in an open-court dialogue with counsel as the basis for its decision.

As an initial matter, the. court addressed the issue of an underlying agreement between the parties by stating:

> What you had it looked to the court was you had an agreement, if you had one at all, you had, and, obviously, the plaintiff is estopped from denying an agreement since you are suing on the basis of an agreement, you had an agreement some of the terms of which had not yet been finalized.

The court then found that the parties agreed to a mandatory forum-selection clause requiring Dutch law to apply to any agreement between the parties and that any conflict would be resolved in the Netherlands.[2]

After finding that the parties had reached agreement on the forum-selection clause, the

---

1. For instance, Evolution sent Koninklijke a draft agreement on October 11, 1994, that provided: This Agreement shall be construed and enforced in accordance with the laws of the Netherlands. Any dispute arising out of this Agreement or out of the relationship among the parties hereto shall be brought in any court of competent subject matter jurisdiction in the Netherlands and the parties hereto, by executing this Agreement, consent to personal jurisdiction in any such case.

2. At the outset, the district court focused its inquiry on "whether or not the parties in fact had any undisputable agreement to refer all disputes to Holland." To address the question, the

court stated that the "mandatory agreement of the parties ... [renders] this court ... effectively without jurisdiction." [3] Rejecting Evolution's argument that the Netherlands was an improper forum for Evolution's claims,[4] the district court granted Koninklijke's motion to dismiss without prejudice as to Evolution raising its claims in the Netherlands.

■ Evolution appeals, arguing that the district court erred in finding an agreement on a mandatory forum-selection provision, that the district court should have applied a forum non conveniens analysis prior to enforcing the clause,[5] and that such an analysis would have revealed that the federal district court should be the venue for the dispute.

## III.

■ In an appeal of a district court's dismissal under Rule 12,[6] "we review factual findings for clear error and legal conclusions de novo." *Wake v. United States*, 89 F.3d 53, 57 (2d Cir.1996) (citation omitted). Based on the district court's findings of fact, our initial inquiry of whether a binding contract existed is one of law. *See Shann v. Dunk*, 84 F.3d 73, 77 (2d Cir.1996) (citation omitted).

■ Under New York contract law, parties may enter into a contract orally even though they contemplate later memorializing their agreement in writing. *See Ciaramella v. Reader's Digest Ass'n*, 131 F.3d 320, 322 (2d Cir.1997). If, however, the parties do not intend to be bound absent a writing, they will not be bound until a written agreement is executed. *See id.* (citations omitted). In the instant case, then, the existence of a contract will depend on whether Evolution and Koninklijke reached agreement on material terms, and whether they intended to be

---

court examined "two formulations" of a forum-selection clause that appeared in the drafts: (1) "any dispute arising out of this agreement or out of the relationship of the parties hereto shall be brought in any court of competent subject matter jurisdiction in the Netherlands;" and (2) "[i]f disputes relating to this agreement cannot be settled amicably they shall be referred to the competent civil court in the Hague, the Netherlands." The court then stated that, in its view, "there are some differences between those two formulations but not with respect to any agreement that disputes ... shall be ... referred or brought to the courts of the Netherlands."

3. In full, the district court stated:
[This] is in the end a fairly simple matter and I will grant the motion to dismiss on the ground that this case, for the reasons already fully set forth in this discussion here today, has been the subject of a mandatory agreement of the parties to refer the—refer any disputes to the courts of the Netherlands and therefore this court is effectively without jurisdiction by the agreement of the parties, or to put it alternatively, the parties have by agreement elected a mandatory fashion, an exclusive fashion is perhaps the best way to say it, the choice of the Netherlands as the forum for the resolution of the disputes before the court and this court sees no reason to disturb that choice.

4. Evolution argues that, among other things, a forum in the Netherlands is inadequate to hear Evolution's claim because it is unclear whether the law of the Netherlands recognizes claims in quantum meruit. The district court stated that Evolution's argument that the Dutch courts are inadequate fails "[w]here you have as here two sophisticated parties and a country whose exper-

tise in the area of commercial relations is something that any school boy knows." The court then said that "it is difficult for [the court] to see how there has not been meaningful compliance with [the] requirement [that a forum-selection clause, to be enforceable, name an adequate forum]."

5. Evolution argues that the court should analyze whether to enforce the forum-selection clause's stricture that Evolution bring its claim in a Dutch forum under forum non conveniens. Unlike Koninklijke's forum non conveniens argument—that the New York forum is not convenient for it—Evolution's argument is misguided because forum non conveniens describes the discretionary power of a court to decline to exercise jurisdiction over a case where convenience and justice would be better served by trying the case in a different forum. *See PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 73 (2d Cir.1998) (citations omitted); *see also Black's Law Dictionary* 655 (6th ed.1990). Consequently, only the courts of the Netherlands are able to decline the exercise of jurisdiction by the Dutch courts under forum non conveniens. We believe that Evolution intended to argue that enforcement of the forum-selection clause would be unreasonable or unfair under the circumstances of the case, and we treat its argument as such.

6. Because the district court based its decision to grant Koninklijke's motion to dismiss on the court's finding of a forum-selection clause, the dismissal is founded on Rule 12(b)(6). *See, e.g., Lambert v. Kysar*, 983 F.2d 1110, 1112 n. 1 (1st Cir.1993) (citation omitted); *see also* Fed. R.Civ.P. 12(b)(6).

bound to that agreement absent an executed writing. To answer the latter question, a court applies the analysis provided by *Winston v. Mediafare Entertainment Corp.*, 777 F.2d 78 (2d Cir.1985). The *Winston* analysis requires a court to consider several factors: (1) whether the parties have expressly reserved the right not to be bound without a written contract; (2) whether there has been partial performance of the contract; (3) whether the parties have agreed to all of the terms of the alleged contract; and (4) whether the alleged agreement is the type that is usually committed to writing. *See id.* at 80 (citations omitted). No single factor is dispositive. *See Ciaramella*, 131 F.3d at 323 (citation omitted).

■ After carefully reviewing the record, we conclude that although there may be sufficient evidence to support a finding that a contract was formed,[7] we are unsure, given the brevity and ambiguity of the district court's opinion, whether the district court made a finding that a contract existed as against merely determining that there was an agreement as to a forum-selection clause.[8] In the absence of a clear finding of a contract, the district court's determination that the parties reached agreement on a forum-selection clause was premature. It is clear from the facts before us that the language upon which the district court based its finding of a forum-selection agreement specifical-

ly related to any dispute arising from the contract that the parties were negotiating. Thus, if no contract exists, the language of the forum-selection clause cannot logically deprive Evolution of its significant right of access to the courts of the United States.

On remand, the district court must conduct a proper *Winston* analysis to determine whether Evolution and Koninklijke entered into a contract. If so, the court must then consider whether that contract contains a forum-selection agreement. If the district court finds a contract and again determines the parties agreed to a forum-selection clause, we note that the court must address whether application of the clause to Evolution's claim is proper.[9]

■ In addition, we point out that the district court's comments indicate that the court concluded that its finding of a mandatory forum-selection clause effectively ousted the court's jurisdiction to consider Evolution's claims. That is not the proper analysis for applying a forum-selection clause.

We are guided in the application of a forum-selection clause in international disputes by *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). *See also New Moon Shipping Co. v. MAN B & W Diesel AG*, 121 F.3d 24, 29 (2d Cir.1997) (applying *M/S Bremen* rule).[10] Under *M/S*

---

**7.** The evidence in the record makes the question of whether the parties entered into a contract a wide-open one. Koninklijke's payment to Evolution and Evolution's attempts at performance tend to support a finding that a contract existed. Moreover, contrary to Evolution's assertion, Koninklijke's statement that it required a vote of its stockholders prior to entering into a contract is not equivalent to a statement that no contract would exist in the absence of a written document. However, the parties' inability to reach agreement on a written draft and the difference in their views on various significant, and perhaps material, terms would tend to support a finding that no contract was formed.

**8.** It appears from the district court's comments that if it found a contract at all, it did so on the theory that Evolution is estopped from challenging the existence of a contract where Evolution asserted a breach of contract as part of its claim. Finding a contract based on estoppel is inappropriate where, as here, the complaint asserts an alternative claim for quantum meruit. Moreover, to consider Evolution's claims, the district

court must necessarily make a *Winston*-analysis finding of whether a contract exists to determine if either claim—breach of contract or quantum meruit—is meritorious.

**9.** As the district court dismissed Evolution's suit based on the court's finding of a forum-selection clause, the court did not address Evolution's copyright infringement claim or Koninklijke's challenge to the court's subject matter jurisdiction to hear that claim. These issues remain before the court, at least for the moment.

**10.** We recognize that both *M/S Bremen* and *New Moon Shipping* involved the application of mandatory-selection clauses in admiralty cases. However, in articulating its rule, the Supreme Court noted the trend of judicial acceptance of forum-limiting clauses by citing a number of cases, including at least one nonadmiralty case. *See M/S Bremen*, 407 U.S. at 10 n. 11, 92 S.Ct. 1907 (citing *Central Contracting Co. v. Maryland Casualty Co.*, 367 F.2d 341 (3d Cir.1966)). The Court does not specifically limit the rule to admi-

*Bremen,* a mandatory forum-selection clause does not "oust the jurisdiction" of the court, but rather requires the court to determine whether the party resisting enforcement of the clause has shown the clause to be unreasonable or unfair under the circumstances. *M/S Bremen,* 407 U.S. at 12, 92 S.Ct. 1907. Therefore, even if the district court finds the existence of a contract and a forum-selection clause, it retains jurisdiction over the action inasmuch as it must enforce the forum-selection provision absent a clear showing by Evolution that enforcement would be "unjust" or that the clause is "invalid for such reasons as fraud or overreaching." *Id.* at 15, 92 S.Ct. 1907.

■ We also note that in the event the district court finds no contract or, upon finding a contract, that the contract did not include an agreement on forum selection, the district court should consider whether it is appropriate to dismiss Evolution's remaining claims under the doctrine of forum non conveniens. The federal doctrine of forum non conveniens "leaves much to the discretion of the court to which [a] plaintiff resorts" to decline to examine a matter in favor of its likely resolution in another forum. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). Such a "transfer" is proper where moving the matter to another forum is more convenient for the parties and witnesses, is in the interest of justice, and where the alternative forum is located abroad. *See American Dredging Co. v. Miller,* 510 U.S. 443, 449 n. 2, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994) (citations omitted).

■ A court conducts its forum non conveniens analysis in two steps. First, to grant a motion to dismiss, "a court must satisfy itself that the litigation may be conducted elsewhere against all defendants." *PT United Can Co. v. Crown Cork & Seal Co.,* 138 F.3d 65, 73 (2d Cir.1998) (citation omitted). If an adequate alternative forum exists, the court must then carefully consider private and public interests affected by transferring the matter. *See id.* (citation omitted). The court is guided in its effort by important considerations articulated by the Supreme Court in *Gulf Oil,* including:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Gulf Oil,* 330 U.S. at 508, 67 S.Ct. 839.[11]

The general rule under *Gulf Oil* requires a court to defer to a plaintiff's choice of forum unless the forum non conveniens factors strongly favor dismissal, *see id.,* especially where the plaintiff resides in the forum state. *See Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255–56, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) (stating that a court reasonably assumes that a plaintiff's home forum is convenient).

■ Nonetheless, we are persuaded by the approach to forum non conveniens analysis adopted in *Kultur Int'l Films Ltd. v. Covent Garden Pioneer, FSP, Ltd.,* 860 F.Supp. 1055 (D.N.J.1994). In *Kultur*

ralty cases, *see id.* at 10, 92 S.Ct. 1907, and the Restatement of the Conflict of Laws supports the application to mandatory forum-selection clauses in contracts, except in limited circumstances such as where the application would be unfair or unreasonable. *See* Restatement (Second) of the Conflict of Laws, 2d § 80 cmt. c (1988 Supp.). Furthermore, the same legal concerns once relevant only to admiralty matters are now commonplace in other international ventures, especially those involving the type of electronic communication and computer integration involved in this dispute. The *M/S Bremen* rule applies soundly to the contract between Evolution and Koninklijke. *See also Jones v. Weibrecht,* 901 F.2d 17, 19 (2d Cir.1990) (holding, in contractual action, that

*M/S Bremen* controls "the enforceability of forum selection clauses in diversity cases").

11. A court's discretion to apply the doctrine of forum non conveniens under New York law is, for the purpose of this case, the same as the federal rule. *See Gulf Oil,* 330 U.S. at 509, 67 S.Ct. 839; *see also Silver v. Great American Ins. Co.,* 29 N.Y.2d 356, 360–61, 328 N.Y.S.2d 398, 278 N.E.2d 619 (1972) (citing *Gulf Oil* for appropriate factors a court must consider before exercising its discretion under the doctrine of forum non conveniens). We therefore need not address the "source from which our rule must flow" in the present case. *Gulf Oil,* 330 U.S. at 509, 67 S.Ct. 839.

*Films,* the district court held that, where the parties exchanged proposed drafts of an agreement containing a forum-selection clause not included in the final agreement and the reason for its omission was unclear, a court factors the proposed forum-selection clause into its forum non conveniens analysis. *See id.* at 1065–66. In the present case then, although the district court must assume at the threshold that Evolution's choice of a New York forum is convenient for a forum non conveniens analysis, the exchange of drafts containing consistent forum-selection clauses eliminates Koninklijke's burden of "establish[ing] that the other *Gulf Oil* private and public factors weigh heavily in favor of adjudication in [a Dutch] forum." *Kultur Films,* 860 F.Supp. at 1066 (citation omitted). In essence, the district court would begin its forum non conveniens assessment of *Gulf Oil* factors with a level set of balances, rather than one weighted heavily in favor of the plaintiff's choice of forum.

### IV.

For the foregoing reasons, we vacate and remand to the district court for a determination of whether Evolution and Koninklijke entered into a contract and, if so, whether that contract contains a forum-selection clause. If the court finds that the parties entered into a contract containing a forum-selection clause, the court must determine whether enforcement of the clause is proper. If the court finds no contract or that any contract between the parties contains no forum-selection clause, the court should determine whether exercising jurisdiction over Evolution's claims is appropriate under a forum non conveniens analysis.