EVOLUTION ONLINE SYSTEMS, INC., Plaintiff,

v.

KONINKLIJKE NEDERLAND N.V., KPN Multimedia, B.V., PTT Telecom B.V., Planet Internet B.V. i.o. and Pieter Van Hoogstraten, Defendant.

No. 95 Civ 7915(JSR).

United States District Court, S.D. New York.

Feb. 25, 1999.

Philip Pierce, New York City, for plaintiff.

## MEMORANDUM ORDER

RAKOFF, District Judge.

This case—involving claims of breach of contract, copyright infringement, and quantum meruit—is again before the Court, on remand from the Second Circuit. On March 17, 1997, in a brief, unreported decision from the bench, the Court granted defendants' motion to dismiss the Complaint on the ground that the parties had agreed that any disputes be litigated in the Netherlands. Through no fault of the parties' able counsel, the District Court's rather terse discussion left the Court of Appeals "unsure, given the brevity and ambiguity of the district court's opinion, whether the district court made a finding that a contract existed as against merely determining that there was an agreement as to a forum-selection clause." *Evolution Online Systems, Inc. v. Koninklijke PTT Nederland N.V.*, 145 F.3d 505, 509 (2d Cir.1998). Accordingly, the Court of Appeals remanded the case so that this Court could determine (1) whether the parties (a) entered into a contract (b) containing a forum-selection clause that (c) should be

enforced in favor of a Netherlands forum, and (2) whether, if the answer to the first question was in any part negative, the case should nonetheless be dismissed on grounds of forum non conveniens. *Id.* at 511.

As to the first question, the Court concludes that the parties entered into a binding contract containing a mandatory forum-selection clause that should be enforced in favor of a Netherlands forum. Although this conclusion removes the necessity of reaching the second question, nonetheless, the Court, for the benefit of such further appellate review as may follow, separately determines that even if the parties' contractual agreement did not already mandate referral to a Netherlands forum, the Court would dismiss the case on the grounds of forum non conveniens.

The pertinent facts, summarized in the Court of Appeals' opinion, *Evolution Online*, 145 F.3d at 507–8, are as follows. In the summer of 1994, the defendants (collectively referred to as "Koninklijke") began negotiating an agreement by which plaintiff Evolution Online Systems, Inc. ("Evolution") would provide Koninklijke with software and computer expertise for a planned computer network in the Netherlands. Following an exchange of letters, Koninklijke, on October 12, 1994, sent Evolution $90,000 to fund initial efforts.

The parties then began to exchange draft written contracts. Between October 1994 and April 1995, the parties exchanged four or more such drafts, each of which included an explicit clause requiring that any disputes between them be litigated in the Netherlands and be governed by Dutch law. While Evolution offered comments about other provisions of these drafts, it never raised any question about the choice-of-law or forum-selection provisions. More generally, the parties' comments on the drafts were largely limited to non-essential matters such as whether termination of the aspect of the agreement pertaining to software maintenance would require 90–days or one-month's notice. *See* Declaration of Pieter Van Hoogstraten, dated January 31, 1996, Exhibit D.

During the same period, Evolution worked extensively on the project embodied in the draft contracts, renting office space, hiring programmers, sending technical workers to the Netherlands, and eventually producing special software programs that were delivered to Koninklijke. In return, Koninklijke paid Evolution more than $400,000.

On June 25, 1995, however, Koninklijke terminated its arrangement with Evolution, asserting that Evolution had repeatedly missed deadlines. Evolution responded by commencing this action, contending that Koninklijke had breached its contract with Evolution, that in any event Koninklijke still owed Evolution substantial sums for value received, and that Koninklijke's continued use of Evolution's computer programs infringed Evolution's copyright.

■ Turning to the first question presented on remand, the Court concludes that referral to the Netherlands forum is required as an appropriate enforcement of a mandatory forum-selection clause in a valid and binding contract. While none of the written drafts exchanged between the parties was signed, an analysis of the relevant factors leads to the conclusion that the parties had reached agreement on the essential terms of their arrangement, including forum selection, and intended to be bound thereby. *See Winston v. Mediafare Entertainment Corporation*, 777 F.2d 78, 80 (2d Cir.1985) (applying New York law); *see also Teachers Ins. and Annuity v. Tribune Company*, 670 F.Supp. 491, 498 (S.D.N.Y.1987) (applying New York law).[1]

---

**1.** While the parties argue over whether *Winston* or *Teachers* is the most relevant precedent, they do not dispute that United States law, and New York law in particular, should be applied by the Court to make this initial determination, nor do they offer anything to indicate the result would be different under Dutch law.

*Winston* sets forth four non-exclusive factors a court should consider to determine whether a contract has been reached in such a case, including (1) whether there has been an express reservation of the right not to be bound in the absence of a writing, (2) whether there has been partial performance of the contract, (3) whether all of the terms of the alleged contract have been agreed upon, and (4) whether the agreement at issue is the type of contract that is usually committed to writing. *Id.* at 80. Applying these factors to the instant case, it is apparent from the drafts the parties exchanged and from the limited nature of the comments thereon that, even though certain minor disputes resulted in the parties' never signing any of the drafts, the parties had nonetheless reached agreement as to the essential terms embodied in these drafts. Moreover, any doubt on this issue is removed by the parties' extensive performance in accordance with the basic terms of the draft contracts. Over the course of one-and-a-half years, Evolution rented offices and hired employees specifically for the project, sent workers to the Netherlands, and eventually produced and delivered the contracted-for product. In response, Koninklijke paid Evolution over $400,000, spread over the same period. This extensive, lengthy, and bilateral performance strongly signals the parties' understanding that a binding contract was in force. *See Weinreich v. Sandhaus,* 850 F.Supp. 1169, 1177 (S.D.N.Y.1994); *see also Viacom International Inc. v. Tandem Productions, Inc.,* 368 F.Supp. 1264, 1270 (S.D.N.Y.1974).

The other *Winston* factors must be interpreted in the context of this extensive contractual performance. No party expressly reserved the right not to be bound until final execution of the contract. While the use of the word "draft" has in some cases been deemed such a reservation, *see e.g., Apple Corps Ltd. v. Sony Music Entertainment, Inc.,* 1993 WL 267362 (S.D.N.Y.), this is not such a case, given the extensive contractual performance. Although disputes existed as to some de-

tails, agreement was reached on a sufficient number of essential terms for the parties to consider themselves committed. Further, the collapse of the deal was not evidence that important terms remained open. Rather, the transaction soured because of Koninklijke's dissatisfaction with Evolution's delays in performance, delays that Koninklijke asserted were breaches of the parties' agreement, rather than failure to reach agreement.

Although couching its pleadings in the alternative, Evolution does not seriously dispute that some kind of contractual agreement existed between the parties—indeed, its first claim is for breach of contract—but it argues that if there was a contract, it was formed by the initial exchange of letters between the parties, which did not include the forum selection clause set out in the formal draft contracts later exchanged. However, there is little to suggest that these cursory, tentative letters themselves constituted a contract, let alone a free-standing one severable from the later drafts. On their faces, the letters—some of which appear illegible—suggest only that they are invitations to reach a more formal and detailed arrangement. By contrast, the contract drafts, taken together with the parties' limited comments thereon, evidence a substantial meeting of the minds, including as to choice-of-forum. Furthermore, the extensive contractual performance occurred almost entirely after the drafts began to be exchanged, suggesting that the parties intended to be bound to the agreed upon provisions in the drafts and not by the earlier informal letters.

■ In short, there was a contractual agreement between the parties and it included a binding forum-selection clause requiring referral of all disputes to the courts of the Netherlands. Evolution has not shown that enforcement of the forum-selection clause would be unjust, unreasonable, or unfair. *See Evolution Online,* 145 F.3d at 509. On the contrary, as discussed

below, the Netherlands is both the appropriate and the most convenient forum for determining these disputes. Accordingly, the Court will enforce the clause and require Evolution, if it wishes to pursue its claims further, to pursue them in the Dutch courts.

■ As noted, the Court, even if it had not reached this conclusion, would have dismissed this suit in favor of a Dutch forum under the doctrine of forum non conveniens. Under that doctrine, the Court must initially determine whether there exists an adequate alternative forum. *See Evolution Online*, 145 F.3d at 510; *see also PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 73 (2d Cir.1998). "Ordinarily, this requirement will be satisfied when the defendant is 'amenable to process' in the other jurisdiction," *Piper Aircraft v. Reyno*, 454 U.S. 235, 254 n. 22, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *see also Blanco v. Banco Industrial de Venezuela*, 997 F.2d 974, 981 (2d Cir.1993). Here it is undisputed that all defendants are amenable to process and subject to personal jurisdiction in the Netherlands. Plaintiff contends, however, that Dutch law may not recognize its claims in quantum meruit and copyright, nor provide all the contract remedies available under New York law. This contention is unconvincing for several reasons.

■ To begin with, a forum is not inadequate merely because of the nonexistence of an identical cause of action or legal theory in the alternative forum, *PT United Can*, 138 F.3d at 74, but only "if the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper Aircraft*, 454 U.S. at 254, 102 S.Ct. 252 (1981). Evolution has not remotely made such a showing. On the contrary, while defendants have provided an affidavit from a Dutch lawyer attesting that all of plaintiff's causes of action are recognized by Dutch law, plaintiff, without supplying any evidence in opposition, merely argues that defendants' affidavit does not specifically state that Dutch law recognizes "quantum meruit." But the affidavit does state that Dutch law recognizes a claim for "unjust enrichment," and these two causes of action, while not identical, are highly similar. Accordingly, defendants' affidavit easily meets the standard of *Piper Aircraft*, 454 U.S. at 254, 102 S.Ct. 252. *See also PT United Can Co.*, 138 F.3d at 74; *Lu v. Air China International Corp.*, 1992 WL 453646, *2 (E.D.N.Y. December 16, 1992).

Further, as noted, plaintiff does not supply any contrary affidavits or other evidence, but merely relies on the defendants' burden of proof. However, absent problems with the defendants' affidavit far more serious than anything suggested here, plaintiff must offer some evidence of its own to counter that submitted by defendants. *See Sussman v. Bank of Israel*, 801 F.Supp. 1068, 1077–1079 (S.D.N.Y. 1992); *see also Lu*, 1992 WL 453646 at *2.

Still further, the defendants' burden to show the adequacy of Dutch law is also satisfied by the plaintiff's clear acceptance of Dutch law in the various draft agreements of the contract. *See Blanco*, 997 F.2d at 981; *see also Philips Credit Corp. v. Regent Health Group, Inc.*, 953 F.Supp. 482, 502 (S.D.N.Y.1997); *Frutico, S.A. v. Bankers Trust Co.*, 833 F.Supp. 288, 296 (S.D.N.Y.1993); *cf. Evolution Online*, 145 F.3d at 511 (plaintiff's clear acceptance of Dutch forum relevant to satisfying defendants' burden to show Netherlands more convenient).

Finally, to the extent that the Netherlands court chooses to apply New York law, plaintiff will not be deprived of that law's benefits. Conversely, it is by no means clear that, even if this action were to remain here, it would be governed by New York substantive law. Quite aside from the plaintiff's acceptance of Dutch law through several draft agreements exchanged between the parties, a court applying New York's "interest analysis test" for choice of law might very likely decide to apply Dutch law to plaintiff's contractu-

al and quasi-contractual claims, considering that the contract was performed and largely negotiated in the Netherlands and that the subject matter of the contract is located there. *See Philips Credit Corp.*, 953 F.Supp. at 503. The applicability of Dutch law would arguably be even more clear with regard to plaintiff's copyright infringement claims, since the infringing acts all occurred in the Netherlands. *See Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 73 (2d Cir.1988); *see also De Bardossy v. Puski*, 763 F.Supp. 1239, 1243 (S.D.N.Y.1991); *London Film Productions Ltd. v. Intercontinental Communications, Inc.*, 580 F.Supp. 47, 50 n. 6 (S.D.N.Y. 1984).

■ Having therefore concluded that the Netherlands is an adequate alternative forum for this lawsuit, the second step in the forum non conveniens analysis is to determine which forum is more convenient, applying the "public" and "private" interest factors identified in *Gulf Oil Corporation v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947). *See Evolution Online*, 145 F.3d at 510; *see also PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 73 (2d Cir.1998). The "public" factors include concerns about court congestion, the interests of forums in deciding local disputes, and the interest in having foreign tribunals decide issues of foreign law, *id.* at 508–9, 67 S.Ct. 839, while the "private" factors include the access to sources of proof, cost of obtaining willing witnesses, availability of compulsory process for unwilling witnesses, and other practical concerns, *id.* at 508, 67 S.Ct. 839. While normally there is a presumption in favor of the plaintiff's chosen forum, here "the exchange of drafts containing consistent [Dutch] forum-selection clauses eliminates" this presumption, *Evolution Online*, 145 F.3d at 511, and, accordingly, this Court is to analyze "the *Gulf Oil* factors with a level set of balances, rather than one weighed heavily in favor of the plaintiff's choice of forum." *Id., citing Kultur Int'l Films Ltd. v. Co-*vent Garden Pioneer, FSP, Ltd.*, 860 F.Supp. 1055 (D.N.J.1994).

With respect to the public factors, Dutch substantive law, as previously discussed, will likely apply to some or all of the underlying disputes in this case, and the Courts of the Netherlands are in the best position to determine and apply their own law. *See The Travelers Indemnity Co. v. S/S Alca*, 710 F.Supp. 497, 502 (S.D.N.Y.), *aff'd* 895 F.2d 1410 (2d Cir.1989). Further, the interest of the Netherlands in this case is greater than that of the United States, as the whole purpose of this transaction was to provide services in the Netherlands, all events of substance occurred there, and the final product is located there.

The most relevant private factor in this case is location of the sources of proof, which likewise weighs significantly in favor of a Dutch forum. In particular, defendants note that no less than five specific categories of highly relevant documents are located in the Netherlands (and are in Dutch). While plaintiff alleges there are relevant documents in New York, it largely fails to identify or quantify them. Further, the computer programs themselves—potentially major sources of proof—are located in the Netherlands.

With respect to the other private factors, most are neutral. For instance, the parties have identified roughly the same number of nonparty witnesses. Although plaintiff strenuously argues that it is in precarious financial condition and would be unable to bring suit in the Netherlands, it supplies no evidence to support this contention aside from conclusory statements from its President. *See, e.g.*, Affidavit of Bruce Fancher, dated March 21st 1996, ¶ 6 ("Evolution is a small corporation with limited financial resources ... Frankly, I am not certain that Evolution has the resources to litigate abroad."). Moreover, no such objection was ever raised to the many contract drafts that would have obligated plaintiff to sue in the Netherlands. Without evidentiary support, plaintiff's be-

lated claims of poverty cannot be afforded substantial weight.

On balance, the Court concludes that, if the enforceable forum-selection clause did not already mandate referral to a Dutch forum, the balance of convenience, weighing substantially in favor of the Dutch forum, would oblige the Court, in the exercise of its discretion, to dismiss this case on the basis of forum non conveniens.

For the foregoing reasons, this case is hereby dismissed. Clerk to enter judgment.

SO ORDERED.