JOCKEY INTERNATIONAL, INC.
and its Subrogated Cargo
Insurers, Plaintiff,

v.

M/V "LEVERKUSEN EXPRESS", her
Engines, boilers, etc., Fritz Transpor-
tation International; Fritz Compa-
nies, Inc.; Hapag–Lloyd A.G.; Hapag–
Lloyd Container Linie GmbH; and
Hapag–Lloyd (America), Inc., Defen-
dants.

Hapag–Lloyd A.G.; Hapag–Lloyd Con-
tainer Linie GmbH; and Hapag–Lloyd
(America), Inc., Third–Party Plain-
tiffs,

v.

Transus Intermodal, Third–
Party Defendant.

No. 01 Civ. 9165(CSH).

United States District Court,
S.D. New York.

Aug. 22, 2002.

**448**

Nicoletti Hornig Campise & Sweeney, New York City, for Jockey International, Inc. and its subrogated cargo insurers, of Counsel David Y. Loh.

Cichanowicz Callan Keane Vengrow & Textor, LLP, New York City, for Hapag–Lloyd Container Linie GmbH, Hapag–LLoyd A.G. and Hapag–Lloyd (America) Inc., of Counsel Joseph De May, Jr.

Hyman Kaplan Ganguzza Spector & Mars, P.A., Miami, FL, Biedermann, Hoenig, Massamillo & Ruff, New York City, of Counsel Nicholas Pantelopoulos, for Fritz Companies and Fritz Transportation.

## MEMORANDUM OPINION AND ORDER

HAIGHT, Senior District Judge.

In this maritime action, plaintiff Jockey International, Inc. seeks to recover for fire and water damage to a shipment of cargo from Laem Chabang, Thailand to Charlotte, North Carolina via Savannah, Georgia. Defendants Hapag–Lloyd Container Linie Gmbh ("Hapag–Lloyd"), Hapag–Lloyd A.G., and Hapag–Lloyd (America), Inc., the ocean carrier, its parent company and its U.S. agent (collectively the "Hapag Defendants"), move to dismiss the claims and cross-claim against them on the basis of an exclusive and mandatory forum selection clause in one of the applicable bills of lading which requires claims to be brought in courts of Hamburg, Germany. Plaintiff, the consignee of the cargo, and defendants Fritz Transportation International and Fritz Companies, Inc. (the "Fritz Defendants") oppose the motion on the grounds that the bill of lading containing the forum clause should be excluded as a discovery sanction or, alternatively, that the Hapag–Lloyd Defendants have waived reliance on the clause by participating in this lawsuit. I find these arguments to be without merit and grant the motion.

### BACKGROUND

Plaintiff Jockey International, Inc. is a clothing manufacturer and the owner and consignee of the damaged cargo. Defen-

dant Fritz Transportation International ("Fritz") is a non-vessel owning common carrier ("NVOCC"), statutorily defined as "a common carrier that does not operate the vessels by which the ocean transportation is provided and is a shipper in its relationship with an ocean common carrier." 46 U.S.C. app. § 1702(17)(B). In other words, NVOCCs like Fritz act as intermediaries by arranging carriage of cargo on another carrier's ship. On August 30, 2000, Jockey's shipper engaged Fritz to arrange for the shipment of cargo including three containers of men's briefs on board the defendant M/V LEVERKUSEN EXPRESS from Thailand to Charlotte, North Carolina. Fritz issued through bill of lading no. 505–000009968 to the shipper of the cargo, T.U.W. Textile Co. The bill of lading identified plaintiff as the consignee of the shipment. Fritz in turn contracted with defendant Hapag–Lloyd Container Linie GmbH ("Hapag–Lloyd") as the ocean carrier for the same cargo. Hapag–Lloyd issued Fritz Express Cargo Bill of Lading no. HLCUBKK000810527 (the "ECB") covering the shipment.

The ECB was not a traditional paper bill of lading. As Hapag–Lloyd explains, when it issued the ECB it used "a dedicated telephone line to transmit an electronic version of the waybill to a computer located in its discharge port office." Hapag Defendants' Reply Brief at p. 6. When an ECB is used, the cargo is claimed by the consignee not by presenting a piece of paper but by proving that it is the consignee named in the electronic bill contained in the computer. Reply Declaration of Sascha Godemann dated July 23, 2002 ("Godemann Declaration") at ¶ 5. Hapag–Lloyd

maintains that it always issues traditional paper bills of lading unless the shipper specifically requests an ECB, as Fritz apparently did in this case. *Id.* at ¶ 4.

The cargo was discharged from the vessel at Savannah and transported by truck to Charlotte. When the cargo arrived in Charlotte in early October, 2000, plaintiff alleges that one of the containers had been damaged by fire. After determining that much of the cargo in that container was irretrievably damaged, Jockey and its subrogated insurers filed this suit in October of 2001 against the ship, the Fritz Defendants and the Hapag Defendants on theories of breach of common carriage, negligence, gross negligence, breach of bailment and breach of contract. The complaint's Schedule A describes the shipment at issue and lists the ECB as well as the separate Fritz bill of lading as the contracts of carriage. Plaintiff seeks recovery of more than $23,000 in damages.

On October 31, 2001, the Hapag Defendants answered the complaint, asserting among its affirmative defenses the existence of a mandatory forum selection clause in the ECB requiring suit to be brought in Germany.[1] Their answer also interposed a cross-claim for indemnity and/or contribution against the Fritz Defendants. The following day, the Hapag Defendants filed a third-party complaint against Transus Intermodal, the trucking company that transported the cargo overland from Savannah to Charlotte, alleging that any damage or loss was the result of Transus's negligence, breach of contract and/or breach of warranty. The Fritz Defendants have asserted cross-claims

---

1. The forum selection clause in the ECB provides in relevant part:

 Except as otherwise provided specifically herein any claim or dispute arising under this Express Cargo Bill shall be governed by the law of the Federal Republic of Germany and determined in the Hamburg courts to the exclusion of the jurisdiction of the courts of any other place.

against the Hapag Defendants. After engaging in discovery and having two discovery conferences with Magistrate Judge Francis, the Hapag Defendants brought this motion to dismiss on June 18, 2002. In addition to opposing the motion plaintiff has filed a cross-motion for summary judgment against both defendants. Briefing on the summary judgment motion has been held in abeyance pending resolution of the motion to dismiss.

## DISCUSSION

I note at the outset that although the parties have not addressed the issue it is not clear which procedural rule governs evaluation of this motion. The Hapag Defendants purport to bring their motion under Rules 12(b)(2) [lack of personal jurisdiction], (3) [improper venue], and (6) [failure to state a claim] of the Federal Rules of Civil Procedure. The Second Circuit has not decided what rule governs dismissals based on a forum selection clause. The court of appeals has instead left open that question, observing that "there is no existing mechanism with which forum selection enforcement is a perfect fit". *New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG*, 121 F.3d 24, 29 (2d Cir.1997). Courts within this circuit have variously considered such motions under Rules 12(b)(1) [lack of subject matter jurisdiction], 12(b)(3) and 12(b)(6). *Compare Indymac Mortgage Holdings, Inc. v. Reyad*, 167 F.Supp.2d 222, 241 (D.Conn.2001) (analyzing motion under 12(b)(6)), *with J.B. Harris, Inc. v. Razei Bar Industries, Ltd.*, 37 F.Supp.2d 186, 188 (E.D.N.Y.1998) (considering motion under 12(b)(3) based on weight of authority and fact that Second Circuit in *New Moon Shipping* considered materials beyond the pleadings which is allowed under Rule 12(b)(3)), *aff'd*, 181 F.3d 82, 1999 WL 319330 (2d Cir.1999).

There also appears to be a split among the circuits concerning which rule forms the proper foundation for such a motion. For example, the Ninth Circuit has determined that motions to enforce forum selection clauses should be treated as motions pursuant to Rule 12(b)(3), *Kukje Hwajae Ins. Co. Ltd. v. M/V Hyundai Liberty*, 294 F.3d 1171, 1174 (9th Cir.2002), whereas the First Circuit holds that dismissals based on forum selection clauses should be made pursuant to Rule 12(b)(6). *Lambert v. Kysar*, 983 F.2d 1110, 1112 n. 1 (1st Cir.1993). The major practical difference between the procedural mechanisms of Rules 12(b)(3) and 12(b)(6) is that the former rule allows courts to consider materials outside the pleadings while the latter does not. *See, e.g., J.B. Harris, Inc.*, 37 F.Supp.2d at 188; *Brennen v. Phyto–Riker Pharmaceuticals, Ltd.*, No. 01 Civ. 11815(DLC), 2002 WL 1349742, *1 n. 2 (S.D.N.Y. June 20, 2002).

■ To the extent this is a difference which matters here, I find that the proper foundation for the motion, at least in this case, is Rule 12(b)(3). I have found no decision in this circuit which has analyzed the enforcement of a forum selection clause as a personal jurisdiction issue and therefore Rule 12(b)(2) seems irrelevant and inappropriate. By contrast, numerous courts within this circuit have utilized Rule 12(b)(3) and 12(b)(6) as the vehicles for deciding such motions. *See, e.g., Evolution Online Systems, Inc. v. Koninklijke PTT Nederland N.V.*, 145 F.3d 505, 508 n. 6 (2d Cir.1998) (noting, without comment, that district court's dismissal based on a forum selection clause was founded on Rule 12(b)(6)); *Medoil Corp. v. Citicorp*, 729 F.Supp. 1456, 1457 n. 1 (S.D.N.Y.1990) (12(b)(3)). The parties at bar do not discuss these procedural questions. Because they submit materials outside the pleadings, I treat the Hapag Defendants' motion

to dismiss based on the forum selection clause as falling under Rule 12(b)(3).

 A forum selection clause is effective if the language delineating the choice of forum is "mandatory rather than permissive," *John Boutari & Son, Wines & Spirits, S.A. v. Attiki Importers & Distrib., Inc.*, 22 F.3d 51, 53 (2d Cir.1994), and makes the chosen jurisdiction exclusive. *Id.* at 52–53. Mandatory and exclusive foreign forum selection clauses are presumptively valid and must be enforced unless they are unreasonable or constitute the product of fraud or overreaching. *M/S Bremen v. Zapata Off–Shore Company*, 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). A party seeking to invalidate such a clause must show that: (1) the clause is the result of fraud or overreaching; (2) the party will be deprived of its day in court as the result of the "grave inconvenience or unfairness of the selected forum"; (3) the party may be deprived of a remedy due to the "fundamental unfairness" of the chosen law; or (4) the clause contravenes a strong public policy of the forum state. *Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1363 (2d Cir.1993) (citations omitted). A party attempting to avoid a valid forum selection clause must "show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *M/S Bremen*, 407 U.S. at 18, 92 S.Ct. 1907.

In the present case, plaintiff and the Fritz Defendants do not invoke any of these factors in arguing that the forum selection clause should not be enforced. They do not argue that the clause is the result of fraud, that Germany is inconvenient or its law fundamentally unfair. Instead, those parties contend that the ECB containing the clause should be barred as a discovery sanction or, alternatively, that the Hapag Defendants have waived their

right to enforce it. I will consider these arguments in turn.

## A. *Discovery Sanction*

Rule 26(a)(1)(B) obligates parties to make initial disclosure of "all documents . . . in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses" within 14 days of the Rule 26(f) conference. The Hapag Defendants made their required Rule 26 disclosures on June 13, 2002 more than four months after their Rule 26(f) conference and four days before making their dismissal motion which relies on the ECB. Noticeably absent from their initial disclosures, however, were copies of the ECB or Hapag–Lloyd's standard long-form bill of lading incorporated therein by reference, both of which contain the relevant forum selection clause. Plaintiff, joined by the Fritz Defendants, relies upon this asserted lack of disclosure as a reason to invoke the sanction of Rule 37(c)(1) and prohibit the Hapag Defendants' use of the forum selection clause in the ECB.

Rule 37(c)(1) of the Federal Rules of Civil Procedure provides that:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2) is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.

Rule 37(c)(1) "provides a self-executing sanction for failure to make a disclosure required by Rule 26(a) . . . [and] prevents a party from using as evidence any witnesses or information that, without substantial justification, has not been disclosed as required by Rules 26(a) and 26(e)(1)." Fed.R.Civ.P. 37, Advisory Com-

mittee Notes (1993 Amendments, Subdivision (c)).

■ The argument that the Hapag Defendants' failure to produce a copy of the ECB and the long form bill of lading violated their Rule 26(a)(1)(B) obligation and requires the forum selection clause's exclusion is unpersuasive.

Despite the "self-executing" nature of Rule 37(c)(1)'s sanction, "courts in this circuit have recognized that 'the imposition of sanctions under Rule 37(c)(1) is a matter within the trial court's discretion." *Ward v. The National Geographic Society*, No. 99 Civ. 12385(LAK), 2002 WL 27777, *2 (S.D.N.Y. Jan.11, 2002) (internal quotation and citation omitted). Moreover, Rule 37(c)(1)'s automatic exclusion sanction comes into play only if a party's failure to disclose is "without substantial justification." "Substantial justification means 'justification to a degree that could satisfy a reasonable person that parties could differ as to whether they party was required to comply with the disclosure request.'" *Henrietta D. v. Giuliani*, No. 95 Civ. 0641, 2001 WL 1602114, *5 (E.D.N.Y. Dec. 11, 2001) (quoting *Nguyen v. IBP, Inc.*, 162 F.R.D. 675, 680 (D.Kan.1995)). Substantial justification exists if "'there exists a genuine dispute concerning compliance.'" *Id.* (quoting *Nguyen*). The sanction is also rendered ineffective if the failure to disclose was harmless. "Failure to comply with the mandate of the Rule is harmless when there is no prejudice to the party entitled to the disclosure." *Nguyen*, 162 F.R.D. at 680.

Here, the failure to furnish a copy of the ECB printout and the bill of lading in the initial Rule 26(a) disclosures was both substantially justified and harmless. In a declaration in further support of the motion to dismiss (the "DeMay Decl."), Joseph De-May, Jr., counsel for the Hapag Defendants, explains that the failure to include the ECB in the initial disclosures was inadvertent. *See* DeMay Decl. at ¶2(a). According to DeMay, whose account I am given no reason to doubt, the ECB printout and standard bill of lading had been set apart from the rest of the Hapag Defendants' discovery documents for use and copying in connection with the motion to dismiss which was being prepared at the same time. When making the disclosure, counsel failed to realize that those documents were missing. The documents were nonetheless provided four days later in exhibits to the present motion to dismiss. Surely this oversight does not constitute one of "those rare cases where a party's conduct represents *flagrant bad faith* and *callous disregard* of the Federal Rules of Civil Procedure" so as to warrant preclusion. *See Grdinich v. Bradlees*, 187 F.R.D. 77, 79 (S.D.N.Y.1999) (italics in original) (quoting *Hinton v. Patnaude*, 162 F.R.D. 435, 439 (N.D.N.Y.1995)). In any case, Rule 26(e) obligates parties to supplement their required disclosure under Rule 26(a) if they discover their disclosure was incomplete. The service of the ECB and the standard bill of lading just four days after their initial Rule 26(a) disclosure cured any defect the original omission created.

In addition, plaintiff and the Fritz Defendants cannot seriously contend that they were prejudiced by the lack of inclusion of those documents in the initial Rule 26(a) material. Plaintiff's own complaint specifically references the ECB, which means that it was well aware of its existence when it initiated this litigation. The Hapag Defendants' answer listed as an affirmative defense the existence of a German forum selection clause, which would have alerted the other parties early on to the existence of the forum selection clause in the unlikely event that they had not previously read the ECB. The Hapag De-

fendants' intention to enforce the forum selection clause by filing this motion was mentioned in a discovery conference before Magistrate Judge Francis in May of 2002, a month before the incomplete disclosure. Thus, plaintiff and the Fritz Defendants cannot argue that they were unfairly surprised by the Hapag Defendants' reliance on these documents despite the fact that they were not formally disclosed until this motion was made.

Apart from a generic cry of prejudice, plaintiff and the Fritz Defendants do not suggest that they would have done anything differently had the documents at issue been disclosed earlier. I cannot conceive of any significant prejudice resulting from the tardy disclosure, particularly since disclosure was made prior to the discovery deadline so that the other parties had an opportunity for further discovery arising out of it if necessary. Having been warned from the outset that the Hapag Defendants would challenge this forum, plaintiff and the Fritz Defendants cannot reap a windfall by precluding that defense merely because of the inadvertent lack of disclosure of the documents upon which that defense rests and of which the parties were previously made aware. Clearly there is no harm here. Accordingly, there is no justification for invoking Rule 37(c)(1) to exclude the ECB and the standard long-form bill of lading which it incorporates.

### B. *Negative Inference*

Plaintiff also argues that the Hapag Defendants' failure to produce a copy of the actual bill of lading should give rise to a "negative inference" that the bill of lading for the subject shipment does not exist. For this argument, plaintiff cites to the Second Circuit decision in *Tupman Thurlow Co., Inc. v. S.S. Cap Castillo*, 490 F.2d 302, 308 (2d Cir.1974), in which the court

of appeals held that the "non-production of material evidence which is in the control of a party raises an inference that that evidence is unfavorable to that party." The court observed that the "inference can of course be rebutted by an adequate explanation for the non-production." *Id.* In *Tupman Thurlow*, the court found that the lack of production of a ship's notebook that reportedly kept record of the temperatures in the ship's hold justified an inference that the contents of the notebook would have been unfavorable to the defendant concerning plaintiff's claim that the beef cargo spoiled on board.

■ Plaintiff argues that the Hapag Defendants' production of a *printout* of the ECB and a copy of its standard long-form bill of lading justifies applying the same unfavorable inference to the existence of the forum selection clause. In other words, plaintiff asks me to infer from defendants' failure to furnish copy of the actual bill of lading issued for the shipment is that the German forum selection clause does not exist. I decline to make the requested inference.

In the first place, plaintiff's syllogism is not sound. *Tupman Thurlow* holds that the failure to produce material evidence may result in a justifiable *inference that* the evidence withheld would have been damaging to the non-producer. Plaintiff argues that the failure to produce the actual bill of lading should require a finding that the forum selection clause does not exist. It is not at all clear that *Tupman Thurlow*, which constituted a ruling concerning the *weight* of the evidence, should be applied to *exclude* evidence as plaintiff suggests.

Nonetheless, plaintiff's contention must be rejected because its premise is mistaken. The Hapag Defendants *have* produced a copy of the bill of lading covering this shipment—the ECB. As explained above,

Hapag–Lloyd, at the request of its shipper, Fritz, supplied not a paper bill of lading but a more efficient and convenient ECB which can be issued entirely through a computer system without leaving any paper trail. In its moving papers, Hapag–Lloyd attached a printout of the front of the ECB from its database at the time the motion was filed, along with a copy of the standard terms and conditions of the ECB and a copy of the standard long-form bill of lading incorporated by reference in the ECB's terms and conditions. After plaintiff and the Fritz Defendants complained that the actual ECB had not been submitted, the Hapag Defendants filed the Godemann Declaration which attaches a contemporaneous printout of the ECB which was generated in Thailand at the time of the shipment. This printout includes the reverse side of the actual ECB containing its terms and conditions. *See* Godemann Declaration at ¶ 3. The terms and conditions of the attached ECB include the German forum selection clause. The ECB also advises that it is governed by "the terms and conditions of the Carrier's Bill of Lading for Multimodal Transport or Port to Port shipment, copies of which are available on request for inspection at any of the Carrier's offices or at the offices of his agents." ECB Section 1(1)(b). The Hapag–Lloyd standard long-form bill of lading forum selection clause identical to the ECBs.

Submission of the copy of the actual ECB printout obtained from Hapag–Lloyd's local agent in Thailand puts to rest plaintiff's argument that a negative inference should arise from the Hapag Defendants' alleged failure to produce the actual bill of lading containing the forum selection clause. I am given no reason to believe that this is not the ECB actually furnished to Fritz and, tellingly, Fritz does not deny that it was the ECB issued.

Even if the Hapag Defendants had not submitted this second ECB printout, it is not at all clear that the initial printout of the ECB from Hapag–Lloyd's computer database would not have been sufficient to constitute production of the actual bill of lading. The primary purpose of issuing the ECB is for the shipper's convenience, so that the consignee need not await receipt of a paper bill of lading before collecting its cargo at disembarkment. Because an ECB is not meant to be issued in paper form, it would be illogical and unfair to penalize Hapag–Lloyd for not maintaining a contemporaneous printout of a document that in shipping practice is not intended to be viewed except on a computer screen.

In any event, because the Hapag Defendants have produced the ECB and a copy of the long-form bill of lading which it incorporates, both of which contain the same German forum selection clause, there is no negative inference to be drawn and the Hapag Defendants may properly rely on it.[2]

---

**2.** Fritz argues that the forum selection clause is not valid because the Hapag Defendants have not produced an ECB that was *physically delivered* at the time of shipment. This argument cannot be accepted. As discussed above, the *raison d'etre* of an ECB is to diminish reliance on paper documents. Moreover, an ECB is issued instead of a bill of lading only if the shipper requests it. Under the Shipping Act of 1998, 46 U.S.C.A. app. § 1707(a)(1)(E) and (2), Hapag–Lloyd was required to publish the terms and conditions of its bills of lading and its ECBs. Hapag–Lloyd did so by publishing them on its website. Because Fritz specifically requested the ECB, it cannot now complain that it was not issued a paper printout of the same or that it had no notice of the bill of lading's terms and conditions. In fact, Fritz does not offer any evidence that establishes these facts. Significantly, despite complaining that the Hapag Defendants have not produced a paper copy

## C. *Waiver*

■ Plaintiff and the Fritz Defendants postulate that even assuming the forum selection clause may properly be invoked, the Hapag Defendants have waived their ability to enforce it because of their participation in this case. They argue that by filing a cross-claim and a third-party complaint and waiting seven months after answering to file this motion to dismiss, the Hapag Defendants have availed themselves of the jurisdiction of this Court and therefore cannot rely on the forum selection clause. This contention fails to persuade.

The Hapag Defendants raised the forum selection clause at the earliest possible time: as an affirmative defense in their answer. While they did file a cross-claim and impleaded a third-party defendant in this action, those actions are not inconsistent with the assertion of their right to litigate in a German forum. Having been sued in this forum, they had a right to defend themselves in the event the forum clause was not upheld without subjecting themselves to waiver. In the analogous context of arbitration clauses, which the Supreme Court considers but a "subset" of forum selection clauses, *see Vimar Seguros y Reaseguros, S.A. v. M/V SKY REEFER*, 515 U.S. 528, 533, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995), courts have held that participation in a lawsuit and delay in seeking a stay of the proceedings does not constitute waiver of the right to enforce an arbitration clause, particularly when the party seeking arbitration has demanded arbitration in its answer. *See Carcich v. Rederi A/B Nordie*, 389 F.2d 692, 695 (2d Cir.1968) (participation in litigation and long delay does not constitute waiver unless other party is prejudiced); *Steel*

*Warehouse Company, Inc. v. Abalone Shipping Limited of Nicosai*, 141 F.3d 234, 238 (5th Cir.1998) (no waiver found in substantial participation in litigation process; "The Appellants had to participate in the litigation in order to protect themselves if the district court chose not to stay the proceedings."). As with arbitration clauses, forum selection clauses are strongly favored and their waiver should likewise not be found lightly.

Courts within this circuit have rejected claims of waiver in cases involving conduct analogous to that of the Hapag Defendants' in the case at bar, even where, unlike here, the defendant has neglected to assert the forum clause as an affirmative defense. In *Rogen v. Memry Corporation*, 886 F.Supp. 393, 396 (S.D.N.Y. 1995), Judge Batts found that the defendant did not abandon the forum selection clause by filing a counterclaim, participating in discovery and opting to file a summary judgment motion instead of a motion to dismiss. In *LPR, SRL v. Challenger Overseas, LLC*, No. 99 Civ. 8883(JGK), 2000 WL 973748, *6 (July 13, 2000), Judge Kaplan determined that the defendant's failure to assert the clause as a defense in its answer, participation in discovery and filing of a third-party complaint did not constitute waiver where the plaintiff had shown no prejudice and the third party complaint was based on a separate contract.

The sole case cited by the parties in which a waiver was found is *Mateco Inc. v. M/V ELLI*, 103 F.Supp.2d 70, 73 (D.P.R. 2000). The defendant in *Mateco* failed to raise the forum clause as an affirmative defense in its answer, participated in discovery for a year and a half before seeking

---

of the ECB, Fritz does not contend that it ever asked for a copy of the ECB printout at the time of shipment or that it was not aware at

that time of the terms and conditions of the ECB including the forum selection clause.

to enforce the forum selection clause, filed a counterclaim and requested that the plaintiffs provide counter-security. The court determined that collectively these actions were inconsistent with the defendant's right to proceed in a different forum. But the most significant factor was the delay in asserting the right which prejudiced the parties as well as the court. As the court pointedly noted, "If not for the long delay, the Court would uphold the forum selection clause." *Id.*

The Hapag Defendants included the forum selection clause as an affirmative defense in their answer. They first indicated an intention to file the motion to dismiss on that basis six months after answering the complaint and filed the motion a month after that. The parties had notice for the entire time the Hapag Defendants have been in the case that they would be challenging this forum. A delay of six to seven months in lodging that challenge is not inordinate, particularly given that discovery was not even completed at the time the motion was filed. Plaintiff and the Fritz Defendants do not indicate that they have suffered any prejudice as a result of the delay. Moreover, although the Hapag Defendants filed a cross-claim and a third party claim in this case I do not think that these actions alone undercut their previously asserted right to challenge the forum and justify waiver. After all, in seeking contribution and/or indemnity from the Fritz Defendants and the trucking company. The Hapag Defendants have done no more than defend themselves. Their participation and claims have hardly escalated this case. I conclude that these actions are not inconsistent with their right to challenge the forum, and therefore find that waiver has not occurred.

D. *Validity of Forum Selection Clause*

Plaintiff and the Fritz defendants make only collateral challenges to the forum selection clause. That is, they attack the Hapag Defendants' ability to rely on it, but they do not attack the clause itself. Those parties do not contend that the clause is not mandatory and exclusive. Nor do they not suggest that it was the result of fraud, that Germany is gravely inconvenient or that its application would contravene public policy here in the United States. As noted, a presumptive validity attaches to these forum selection clauses. Having determined that the Hapag Defendants may rely on the ECB's forum selection clause and because no one has attempted to overcome its validity, I must enforce it.

■ Although none of the parties raises this issue, I note that the clause binds plaintiff as well as Fritz even though plaintiff is not a party to the ECB. Courts, including the Second Circuit, have held that provisions of a bill of lading issued to an intermediary like Fritz also bind the consignee on whose behalf the intermediary acted in arranging the shipment. In *Stolt Tank Containers, Inc. v. Evergreen Marine Corporation,* 962 F.2d 276, 279–80 (2d Cir.1992), the court of appeals held that the owner of damaged containers was subject to the liability limitations contained in a bill of lading issued by the carrier to an intermediary without reference to the owner. The court rejected the owner's argument that it could not be bound by a contract to which it was not a party, concluding that "where a party is aware that another is shipping its packages aboard a vessel and has at least constructive notice that liability limitations might apply, that party is bound by the liability limitations agreed to by the shipper." *Id.* at 280. While the Second Circuit has not addressed the binding nature of forum selection clauses in particular, *Stolt's* reasoning would appear to apply to the other provisions of such a contract. Applying similar

reasoning the Ninth Circuit has recently held that a forum selection clause in a bill of lading issued to an NVOCC binds the cargo owner. *See Kukje Hwajae Ins. Co., Ltd.,* 294 F.3d at 1177. As the Ninth Circuit explained, "because an NVOCC is considered, in general, to act as an agent for the cargo's owner when it contracts for carriage on a vessel, and because in this case [the NVOCC] was acting as [the cargo owner's] agent when it accepted the [shipper's] bill of lading, [the cargo owner's subrogated insurer] is bound by that bill." *Id. See also Indemnity Insurance Co. of North America v. Schneider Freight USA, Inc.,* No. CV 00–08032, 2001 WL 1356247, *4–*5 (C.D.Cal. June 15, 2001) (NVOCC bound owner to forum selection clause in bill of lading).

There is no doubt that plaintiff engaged Fritz, an NVOCC, to have its cargo shipped on board another carrier's vessel. Plaintiff was therefore well aware that another carrier would be transporting its goods; indeed, plaintiff invoked the ECB in bringing this lawsuit. Because Fritz acted as plaintiff's agent in arranging for the shipment of briefs, plaintiff is bound by the terms and conditions of the ECB including the forum selection clause.

Moreover, although Hapag–Lloyd is the only one of the three Hapag Defendants that is a party to the ECB, all three may have the benefit of the clause and plaintiff and the Fritz Defendants do not argue otherwise. Provisions in both the ECB and the standard bill of lading extend the contracts' defenses to anyone else performing the carrier's obligations. Moreover, forum selection clauses have been held to benefit related parties who are alleged to have had the same obligations and committed the same wrongs as the contracting defendant. *See, e.g., Street, Sound Around Electronics, Inc. v. M/V Royal Container,* 30 F.Supp.2d 661, 663

(S.D.N.Y.1999) (granting non-signatory defendants, who all helped procure the carriage, the benefit of the forum selection clause on the basis of similar language in the applicable bills of lading).

*CONCLUSION*

The mandatory and exclusive forum selection clause contained in the ECB is valid and the Hapag Defendants are entitled to enforce it. Because that clause requires claims arising out of the ECB to be brought in the courts of Hamburg, Germany, the Hapag Defendants' motion to dismiss the claims against it in this jurisdiction on the basis of the forum selection clause is granted.

Dismissal of plaintiff's claim against the Hapag Defendants moots the plaintiff's pending motion for summary judgment against those defendants. That motion remains for adjudication as against the against the Fritz Defendants. The Fritz Defendants are directed to file and serve their opposition to the summary judgment motion on or before September 16, 2002. If so advised, plaintiff may file and serve reply papers on or before September 30, 2002.

The Clerk of the Court is directed to enter an Order:

1. dismissing plaintiff's claim and the Fritz Defendants' cross-claims against the Hapag Defendants, without prejudice to their assertion in the courts of Hamburg, Germany;

2. dismissing the Hapag Defendants' cross-claims against the Fritz Defendants as moot;

3. denying plaintiff's motion for summary judgment against the Hapag Defendants as moot; and

4. dismissing the Hapag Defendants' Third Party Complaint against Transus Intermodal.

It is SO ORDERED.